Next case is United States of America v. William Washington, number 21-3299. Mr. Schweitzer. Good morning, your honors. Brett Schweitzer of the Federal Defender's Office here representing Mr. Washington. This time I'd like to reserve three minutes for rebuttal. Thank you. Your honors, it's a crime to assault an officer of the United States. It's also a crime to assault a private contractor assisting an officer of the United States. The grand jury here charged only the former. When at trial, it turned out that Bell and Smith were in fact private contractors. The district court upheld the conviction on the theory that a private contractor is in fact an officer of the United States. That's wrong, and the convictions need to be reversed. Do we need to get to prejudice here? You don't, your honor, for a couple of reasons. First, the theory of guilt has been a moving target in this case, and that relates to whether prejudice is required. So if I may just sort of sketch out, I believe, what is on the table here today. Below, of course, the argument was that officer of the United States is used in 1114, encompasses not only officers of the United States, but also employees, folks assisting them. We've shown in the opening brief why that, just as a textual matter, cannot be the case, and the government's abandoned that. So I think that's off the table. What the government has come forward with now are sort of two alternative theories. One is a new theory in which officer of the United States means police types, anybody with police duties, and the other is that, okay, forget officer of the United States altogether. Bell and Smith were actually assistants, okay? And so to go back to your honor's prejudice point, that second argument is, whether you consider it, whether it was made below, we say it wasn't. It was a different argument below. But even granted for the moment, let's say it was made below. That would be a clear constructive amendment, and that's a per se reversible error. There's no prejudice. Why would it be a variance instead of a constructive amendment? Because the distinction between constructive amendment and variance has to do with whether it's an essential term of the crime. And so here, the status element is a critical element. In fact, how would Washington's defense have differed if he had been charged with assaulting, let's say, a person designated under section 1114? Which would be obviously more inclusive. It would include officers and people assisting officers. I'm sorry, if the indictment had said, had you assaulted a person designated under section 1114? Well, the defense would have changed because I don't think that would have been a permissible charge. I think the element here is the specific status. Just as like in 922G, I don't think it would be appropriate to say, well, they're a prohibited person. The indictment charged you're a felon. But at trial, we proved that you had been in a mental institution or something like that. Status is key. So I don't think just charging an umbrella term would satisfy. But if it had, then the defense would have changed because not only would it not have been enough to show that Bell and Smith were not actually officers of the United States, they were private contractors. And that's all the defense was here because that's what was charged. If it had been broader than that, whether an umbrella term or whether the charge had been an assistant assisting an officer of the United States, then the defense would have been different. What is an assistant? First of all, there's a legal component to any sufficiency argument. And then in addition, were Bell and Smith actually assisting whoever these designated officers are? Now, of course, below, no officers are designated. This is all hypothetical. It's not in the indictment anyway. But even argued, as argued in the constructive amendment, no specific officers were identified. The theory below was, well, you're helping the SSA. That's good enough. Now an appeal we hear, well, it was assisting the FPS officer who showed up after the fact. He was assisting... It's a totally different trial. It's a different trial. It's a totally different trial. But why... Could the government have just charged that your client assaulted an officer of the United States or an employee of the United States or somebody assisting? Can the government charge that way? Because it is sort of foreseeable that after the scuffle, it might not be crystal clear whether the putative victim was an officer, an employee, or someone assisting. Because the statute lumps them all together. It doesn't break them out. Well, I think the statute fairly read is an incorporation of 1114. And 1114 does have a series of different statuses, just like... But they're all in a row. It's not, you know, sub A, sub B, sub C. I mean, there are three statuses. You have to be one of the three statuses in order... I think that's right. I think that's under handling. I think that's a handling fact. I think you need to... That's a fact that needs to be charged in the indictment in order to put the defendant on notice on what he has to prove. Just like we said, it's going to be a different trial. So what happens when they charge that the person's an officer and then they later realize during discovery or further investigation the person's just an employee? Then what happens? They dismiss the indictment and re-indict as an employee? They supersede. I suspect what this... I can't speak for my colleague, but this looks to me like a case that was... A mistake was made at the indictment stage. And I don't know if it was because of the pandemic. I don't know if a grand jury was available or just, hey, let's just go with officer and try to shoehorn everything into officer. Whatever that tactical decision went into that, it doesn't... My client doesn't carry the weight of that. I mean, it's clear that the indictment that was returned was just inaccurate to the extent it said KB, a protective services officer, capital P, capital S, capital O. That's just factually incorrect. I don't think the government's conceded that. Which is why they're pivoting to... Well, these folks were assisting the federal officers. I think that's probably right. I mean, that seems to me more of a variance than a constructive amendment. It's not a variance for this reason. If it had just been the title change, but the charge was correct in terms of this person was an officer in the United States, or this person was a person assisting an officer or an employee, whatever. If that's correct, but then there's some sort of title mix up. Yes, that's a variance. That doesn't matter. There's no difference between Washington's conduct described in the indictment and what they proved at trial, right? Washington's conduct, same. I guess I don't know why the class of the victims, whether officers or employees or assisting officers, is an element of the conduct. Under that, it's an element, Your Honor, because it is... As opposed to the more general, a person designated under Section 111.14. Well, so the case law is, and unfortunately I've read I think all of the 111.14, they're all charged as a specific. Is this person an officer? Is this person an employee or an assistant or whatever? All of the private contractor cases, essentially, are analyzed under that correctly, under the assistant theory. So there's no... I can't point you to a case that's decided what that element is, but the practice is that it's always charged specifically and, importantly, it doesn't really... It's rather an academic matter here because it was charged specifically here. So whether, if we stand back and say, hey, from first principles, what's the proper element here? The fact of the matter is the grand jury was asked to and did return an indictment specifically charging officers. It was charged that way. It seems like the issue is whether it would be a variance or a constructive amendment. Right. And so let me get back to, Your Honor, if I may. Hamling and, you know, black letter law says that, you know, it's not enough to parrot the language of a statute and an indictment. In addition, an indictment is what he needs to do at trial. And the fact of whether the person, the status of the person, of the victim, is a critical fact in order to prepare for trial. As we said, the trials look totally different. So under Hamling, that becomes part of the element. That becomes what needs to be charged. That's why I don't... That's why I asked about how... I mean, Washington's conduct doesn't change depending on the status of these guys. Right. I don't know how his defense changes. Well, so... Okay. So the conduct of a gun possessor doesn't change either. So no one would... I don't think anyone would say that if there's a felon in possession charged in an indictment and at trial it's like, oops, wasn't a felon, but look, he was in a mental institution 10 years ago. That's not kosher. But the conduct hasn't changed. It's gun possession. It's the same thing here. This is not a general, obviously not a general assault statute. Right. So the status element is critical. And so what the... Correct. And you can't point a defendant in the wrong direction and then sustain a conviction. It's a bait-and-switch, basically. And your entire theory of defense was tethered to the fact, in essence, just prove that they were officers of the United States. Absolutely. That's the whole theory of the case. That's what this entire trial was about. There's no center requirement, right, for him to know that they were one of those three categories. Correct. That's the OLA. Yeah. Yes. Yeah. And we're not... So how is it... I don't see how it matters. Well, I mean... He doesn't need to know. He just... He went after a guy. It turns out he was an officer or assisting an officer or an employee. Well, the status still matters because then if the status doesn't matter... It's not a federal crime. It might be some other crime. He beat somebody up on the street. He doesn't need to know, is my point. Correct. He does not need to know. And we're not saying he does need to know. But the reality is the status element has to be met or there's no federal jurisdiction. The element the governor has to prove. Correct. They have to prove it. But I don't see how it changes his defense since he doesn't need to know. So the defense doesn't take Mr. Washington's mental state out of the equation where it belongs. It doesn't evolve here at all. The two trials are different. The one trial is what actually happened here because that's what the defense was pointed to. Focus solely on he's triple canopy. He's not a PSO. It's a technical defense. Your actual defense was the ultimate in technical defense. It was their burden of proof, you know. Defense counsel waited. They didn't prove their case. Defense counsel stood up and said, hey, they're not federal protective officers. True. We win. And that's when the district judge said, well, you could have brought that to my attention earlier. And defense counsel said, that's not our job. That's their job. And it's not. I'll pause. But I do want to come back to Judge Porter's question. I'll pause there for a second. I hope the court isn't caught up on that. Obviously, it's not the defense's job, you know, to look through the discovery and say, gee, Governor, we think you've got a proof problem here. Maybe you ought to charge this differently under a different theory. That's not a 12B motion. Right. That might be quite an alteration to our adversary system. But getting back to your point, Judge Porter, so the trial is different. That was the trial. That's the actual trial. That's the actual indictment. The trial that happens when this case is, quote, properly charged, say, is all about who are these assistants? What does assistants mean? Does someone who shows up after the fact, was he assisting the guy who actually ended up transporting him? Well, I don't know. We don't have a technical legal defense to a consummately factual defense about what actually happened here at what time and what order, et cetera. Yeah, I get it. And maybe then there's no jury. Maybe there's not a bench trial. There's all sorts of things that change under that scenario. Your Honor, I think I say I'm out of time. Thank you for indulging. All right. We'll hear you on rebuttal. Thank you, Mr. Schweitzer. Mr. Jayne, I'm sorry to jump in before you get to start, but would you mind beginning your argument with Mr. Schweitzer's claim that the government is no longer pressing the notion that the two victims here were officers of the United States? Your Honor, Kevin Jayne on behalf of the United States, that's not correct. The indictment charges officers of the United States. The discovery and the jury instructions that were proposed by the government that was unobjective from the defendant included a definition of both officers and assisting. The evidence was presented, and there was sufficient evidence on both of those points, and the district judge found that they were officers of the United States. All right. That's not correct. Then let's focus on that because I'm having trouble understanding how we could conclude that two private security officers who work for Triple Canopy could be officers of the United States. And I'm having trouble not only because it's quite counterintuitive, they're private, not government, but it would seem that we would be reading a lot of language out of the statute if we were to agree with that argument, and here's why. The statute says that you can commit a federal offense under 1114 if you assault or otherwise do bad things to an officer of the United States, an employee of the United States, or someone assisting an officer of the United States, correct? Or employee, yes, Your Honor. Officer, employee, or assistant. Correct. Okay. It's your argument that if you're assisting, and these Triple Canopy people were, you can see they're not employees of the United States. That's correct, Your Honor. Okay. Go ahead. I was just saying, which is key to those, the line of cases decided what's really important in those cases with contractors relates to employee. Okay. So they're not employees, but yet if officer of the United States is an umbrella term that encompasses officers and assistants, we should read the statute in pari materia and say that, well, that also covers employees. And yet there's something quite odd when the statute itself says officers, and it distinguishes officers from employees, and it distinguishes both of those from assistants to say that all three of those equal officers of the United States. It seems like a very strange way to read the statute. So, Your Honor, the statute itself, assistants of the United, assistants that were added to modify employees and officers was done by Congress to broaden this statute. And in terms of how it's modified, in this particular case, the jury instructions that were submitted to the district court were specifically related to officers and defining that as the heading does, that Congress defined the heading to say officers or employees in that particular statute, 1114. And focusing in on officers, because there was no question in the case that they were employees, it's either officers or those who assist officers. So it's really a sort of, as Judge Harman, you characterize as a unitary concept in terms of what matters is the relationship to the officer. It's an officer itself or someone who assists the officer. And so what the government did is provide jury instructions that were unobjected by the defense that described officer of the United States as encompassing the individual or someone who assists that individual. That was submitted to the district judge. But what if that jury instruction is a misreading of the statute? Don't we have the power and indeed the duty to say so? If your honors find that officers of the United States does not include this particular... Assistance. Right. Assistance. Yeah. If it doesn't include... So what's important here, I think your honor, and this gets to something that Mr. Schweitzer said, is what we're dealing with is not an element of the crime. We're dealing with means or alternative methods by which you can prove that particular element, which is the designated person. And I say that because the Supreme Court, and again, you're objected to look at this case, but math tells us or guides us in terms of... Guides this court in terms of what we are looking at here in terms of this statute. And this is not an element of the crime. The element is the designated person. And these particular ways you can prove this element is through these different means or alternative methods. And the assistance merely modify... I'm really confused now. You're saying the status of the victim is a method? No. Is it a means? The individual... So in terms of the charging, we charged officer of the United States as protected by 1114. We could have charged... I could have just charged that a person that qualifies or some language of that effect under 1114. And then we get to the statute 1114, which is not the offense, but it incorporated a referring statute, which is a murder statute. And we have the various alternative methods by which you can prove that status. Now we happen to include that in our indictment. All right. So you've got to status, right? Correct. All right. So employees out. Employees out. You didn't prove that they're employees. Right. You didn't prove that they're officers of the United States. We did. We did. I thought you proved that they were... Or you were trying to prove that they were assisting officers of the United States. We did both, Your Honor. Didn't the district court find they were So that refers to the Fiola case, which is important in this context because the Supreme Court has said that this particular statute... Now they were looking at oppressive prior version, but it's actually been expanded. But even in that prior version, the Supreme Court said that this is a very expansive statute that's supposed to get to federal functions, which is one of the things that the district court cited in its Rule 29 order. Well, it certainly does get to federal functions because it doesn't protect only officers and employees. It protects private people that are assisting officers, right? Correct. But the case wasn't charged that way. The indictment didn't say that the two victims here were assisting federal officers. It said that they were protective service officers, and that's incorrect. It's not... Well, so the government's argument is that officers... It is an officer of the United States for the reasons that are explained in my brief. Wait, wait. Instead of it, let's talk about the people. I mean, there are two people that work for Triple Canopy. You're saying it's the government's argument that two private contractors that work for Triple Canopy are officers of the United States? Correct. All right. When? Every day? All day? As long as they're performing that federal function in the building. And I can give you an example. So the plane... What is the federal function in the building? If they're stationed there? Right. So the word officer under the definition is somebody who is charged with police duties or someone who has an office of trust, authority, or command. We believe that it's both. And just to give you... I can give you an analogy if your honor would allow me. Today, when you walked into the courthouse, I assume that you would normally do. And let's say there were two CSO officers and you reached for your judge's badge and you didn't have it. Those officers would have the authority to prevent an Article III judge to enter his own courtroom if they didn't know who you are until that you're verified. So it's not hard for me to conclude that they are persons. I think they're private contractors. Correct. And they're assisting. And I think I'm an officer of the United States. I don't know. I know I have life tenure, which is nice. So it's not hard to conclude that they are private contractors assisting. So they fall into the assisting bucket. They're not officers themselves. They're not employees. But I get back to the beginning here. The argument you're making is, oh, no, no. They're not assisting the federal court here. They themselves are officers of the United States. That's your argument? They're both. They're both. If they're both, then the statute is hopelessly redundant. So there is some redundancy in the statute if you think about it. And Congress doesn't always, when they do categories of items, they sometimes do overlapping items where a factual situation can cover both. And I can refer you to Judge Sack talks about this in his concurring opinion in the Second Circuit. Wow. So if I'm walking down Market Street and somebody assaults me and a private, a good Samaritan comes up and protects me and helps the person, that person becomes an officer of the United States because they are assisting an officer of the United States? That's your argument? No. So there has to be a relationship to federal function. So in terms of whether these officers are... What's the federal function here? Providing a social security office? Okay. So in this particular sense, they're providing security, physical security to the building and the individuals at a federal facility. So they are both providing a type of police power and authority and command over that building when they perform that function. And they're also assisting officers and employees at the same time. How do you define a police function in a social security office? Do they have to be in uniform? It may be a fact that's important. Do they have to have a gun? Do these people have guns? I don't know if that's in the record. I don't think they did. But what's important is that this particular statute does not define officer. And there's various officers within the federal system from the executive branch. No, it doesn't define officer, but that's what makes this case hard for us. We have to define it. We have to parse the statute and figure out what officer means, what employee means, and what person assisting officers mean. There's at least five categories of people identified in the statute. Written in the disjunctive, the or, or, or, or, or. You're telling us that the it makes it even stranger. It hops over employees and doesn't encompass them, but it encompasses people assisting. Right. So, so again, if we go back to FIOLA, Congress has created a very broad statute that they've only been making more broad. The last adjustments have only made it more broad to cover more people that have a relationship to a federal function. So to give you an example. I, I, I, I don't, I'm sorry to cut you off on the breadth argument, but that to me doesn't help you because I'm willing to just concede, Mr. Schweitzer will tell me why I'm wrong in a minute, but I'm willing to concede that you could have easily charged and proved that, that Mr. Washington was guilty of assaulting persons assisting federal officers. Maybe, maybe it gets a little tricky because you've got a proof issue about the timing. Okay. But, but that wasn't the way this case was charged or tried. And it wasn't the holding of the, of the judge that oversaw the bench trial. Correct your honor. So, so all of that seems to suggest in bright lights that this would be a constructive amendment or a variance. So I don't want to concede that first issue, but I see, I see where your honor is going. Yes, it is. It is related to whether it's a constructive amendment or a variance. And in terms of this case, it's not a constructive amendment. Constructive amendment is typically deals with when the crime itself changes. You, you have the wrong defendant. You have the wrong, the crime attorney happened on the wrong date. The, it's a, it's a robbery, not a burglary. Those are constructive amendments under the case law. What we have here is, is if your honors find that, that officer United of the United States is charged incorrectly, it is merely a, a variance and it's not a prejudicial one. And it's not a prejudicial one for very, a very important reason. I think there was a discussion about how this trial would have changed. The defendant handed up a pocket brief at the rule 29 that said not, not officers in the United States. And that's the first issue, but also that there was a variance that happened. So they were fully prepared because they had seen the government's proposed jury instructions, did not object to them. That's the defined officers of the United States in two ways, which you see definitions happen like this all the time. There's a general category. We're going to call it this. And then here's what it means. That's what the government submitted. They knew it. They put it in a pocket brief. So we had this trial and, and, and the defense counsel handed it up to the court, made their argument. So there was no surprise in this case. He knew exactly what was going on. And, um, the government was well within its right to argue both in the alternative, that they were officers in the United States, focusing in on that, that they were assisting officers of the United States. That's what they did. They did both the trial, but they focused on the assistance argument with judge, um, judge young. Can you, can you cite the record to support that? Wait, where did the prosecutor focus in on the, the assist? So there is a, I don't have the, the, I wish I had the record side in front of it. There is a reference to a pocket, the brief being handed up to the court at the moment that the oral, the, um, the oral rule 29 was made. And the argument was, it is with a sufficiency argument. They didn't meet sufficiency on officer. Oh, and by the way, they're saying assist, assisting, we didn't object to their, no, they didn't say this, but we didn't object to their jury instructions. They're saying assisting, this is a constructive amendment, uh, and a, and a, and a, or at least a variance. And that was made in real time. Why would they, why would they object to jury instructions if their theory of the case is mischarged? Is there any obligation on defense counsel and a bench trial to bring that to the government's attention before you rest? So if it, Don, on the officer piece, if it's a sufficiency, um, argument, no, and I see my time has expired, but if I, if I may just finish that second part. If you're going to argue in the alternative that it is a constructive amendment or a variance in terms of the prejudice, it's, it's absolutely relevant whether they would have challenged the, the jury instructions themselves. What obligation does defense counsel have to do that for the government? Uh, it, it, they didn't have an obligation to do it, your honor? Zero, zero obligation. They didn't have an obligation, but it matters for the review of this court to know whether or not there was prejudice. To look at prejudice, you ask yourself, what, what is it that happened? What would the, what did the defendant know and what would they have done differently? They were fully aware of what was happening here and made a strategic decision to file their motion to include both of those arguments. And there's, I'm not saying there's anything wrong with that, but it's relevant to what knowledge they had. And if, if they had objected to the jury instructions, at least the, the, the district judge would have the opportunity to weigh in on whether those instructions were correct as, as structured, unless your, your honors have any other questions. I have one more too. Go ahead. You've mentioned FIOLA a couple of times. I'm not sure that, I mean, I don't think FIOLA held that federal functions is a, is part of the definition of federal office or the issue there was the Santerp one that I raised before. Why do you say that FIOLA establishes that performing a federal function turns one into an officer? So the point of FIOLA is that, is in terms of the breadth of the statute. This is not, and Congress said specifically that they wanted to give, that Congress wanted to give maximum protection to federal officers. So FIOLA is a different issue, but it's, it illustrates the breadth of the statute. There are cases like out of this circuit, Bancoff, that talk about, in a different context, that section 115, it talks about the definition of official. And so your honor was, Judge Hardiman, you were concerned about whether this, you know, these are obviously not officers. Well, in that case, this court held that these protective security, excuse me, that officials at the SSA are officials. And the Ninth Circuit, citing to the Third Circuit's case, found that protective security officers, the very people that we have here, are officials for purposes of the statute. So in a different context, another title that you would think wouldn't. Didn't Bancoff threaten social security employees? Correct. Okay. And so I would just point out that. I think we're all in agreement, including Mr. Schweitzer, that if, if Washington had threatened an officer, an employee, or a person assisting, then he's in the suit for that. So. And I just, I mentioned, I'm not sure how Bancoff helps you. Well, it's, it's not an, it's not an employee that they were defining. It was official. And there was this, there's a question of whether an employee can be an official. And the Ninth Circuit in Luna said, citing to Bancoff, said that official also includes protective security officers when they were contractors. And there's, there's sort of similar issue. Are they officers? Are they, are they officials? And they said, for purposes of this statute, in that case 115, officials include those officers. And employees. But in Luna, they weren't employees. They were, they were contractors. No, but we later, yeah. But Bancoff, you're right. They were employees. But there, there's a good argument for why an employee wouldn't necessarily be an official for the reasons your Honor pointed out. We're not talking about Article III judges or, you know, others in the executive branch. But. Yeah, so that goes, that goes to your breadth argument. Clearly the statute, the statute isn't just trying to protect the people at the top of the food chain. They're trying to protect everybody who are discharging the, the federal function. Which also supports your point about function. But let me ask you about that. Because I haven't seen any cases from our court or another circuit holding that a private, a private contractor is an officer of the United States under Section 111 and 1114. Unless, there are many cases where they have been. But they're all cases or seem to be all cases where the person was deputized or assigned to a federal outfit. Like people serving on a DEA task force, for example. Or especially designated by statute as a federal officer or employee in certain cases. Do you have any, any case support that, that don't include those, those two categories? I don't have, this specific case that I'm not aware of has come up. Where you have a protective security officer, which is, again, is, is a type of police function. But there are, there, for instance, the Kirkland case is a male, a private contractor, truck driver who's moving mail back and forth. And in Kirkland, the circuit court said that doesn't work. This case is different, your honor, and the reason it's different is because they fall under that definition. And the government would ask for a very narrow, narrow ruling here. We're not asking to disturb Kirkland or any of these other, other cases or be in conflict with them. We're asking to look carefully at the facts related to protective security officers. Based on their function in relationship to the federal, federal function that they serve. And, and, and craft a ruling that would, would encompass them. And if, if your honors don't buy that, we go to, we go to. Yeah, I mean, we, we could do that. I mean, that, that at first blush, that strikes me as consistent with the law. I just don't know how that helps you win the case, because the case wasn't charged or tried that way. It was tried both ways. The government put on evidence, both that they were an officer and assisting. And, and again, let, let me, you know, ask again, where in the record, do you have any sort of citations that would show us that, that the prosecutor was, was hitting the, the assistant issue rather than just, you know, these people are officers? Just, I don't have the citation to, but in recalling what happened, both officers who testified, both officers and Bell, both testified that they were assisting the FPS in their duties. And in addition, when describing what happened that day and what they did in terms of how they're trained and supervised. They're trained and supervised by the law enforcement at the Federal Protective Service. They work at the building. The day of the assault, where they were violently assaulted by Mr. Washington, they worked with the district manager at the SSA in terms of, and taking direction for him, whether or not to allow this person to become, come in or out of the building. And then together they had to thwart this violent assault from Mr. Washington. So the facts bore out that there was assisting that was going on throughout this whole thing. All right, and if that's true, is it still possible that those facts were variants from what the indictment said? It, if, if, if the government didn't charge us correctly, this, not an element but a means, then it's not a constructive amendment. And if, if anything, it would be at most a variance that's not prejudicial. Because as I said, defense counsel knew exactly what was happening when they handed their pocket brief into the district judge at the Rule 29. So if you go back to August of 20, would you charge the case the same way? Would I charge the case the same way? I probably would not. But as... How would you charge it? I would probably, I would probably charge it as assisting. I would do that. But what's important here, as Judge Krause has said previously, is what's not required as ideal charging, but, but proper charging or charging that gives notice. And Judge Hardiman, there's a case, and it's escaping me the name. You've also made this point in, in cases before that, that yes, you got to do it properly, but the law allows for some variance. And this is, this is the case where, where it, it, it, if your honors find that there was a variance, that, that, that it was not a constructive amendment, that it would be a variance, and that variance is not prejudicial. Mr. Schweitzer can't come up and tell you that they didn't know exactly what was happening, that the government's theory, that, that the, that the jury instructions were laid out to the judge and knew exactly what was going on. That the government put on evidence of assisting, including using the words assist, and also describing the actions of these officers. So. Mr. Schweitzer was defending the indictment, not any possibility from the indictment. But it's, it's relevant to prejudice, your honor. So prejudice, it matters whether they knew what was going on and what they did with it. Because the argument is, it affected me, this smaller than constructive amendment problem in the charging affected my case. And you can't do that because they knew exactly what was happening. And so much so that they were ready to go to, to file a Rule 29 in this case. Thank you very much, Mr. Jane. Rebuttal, Mr. Schweitzer. Thank you, your honors. Let me start by giving you those citations, Judge Hardiman. It's record 193 to 194 and 250 to 251. And what you'll find there is not an argument that these folks were assistants, and therefore are assistants under the statute. What you'll find there is the, I still believe to be abandoned, but I'm not quite sure after Mr. Jane's presentation, the umbrella theory. That it means everything. That doesn't make any sense. But that's what the argument was below. And it makes, we kind of know why that was the argument. Because it was all about shoehorning. We've got this indictment that is not optimal, to say the very least. And how can we, how can we fit the facts into the indictment? And so that's what the argument was below. It's a different argument now. The sort of, you know. Had the statute run? Was it too late to supersede at that point? No, it was not, no, it was not too late. And so, you know, I don't. Not one of the biggest cases in the office, I would assume. Not one of the biggest cases. It was the pandemic, who knows what. But let me just say, so there was a lot of discussion about whether these triple canopy folks are officers of the United States. I think it's not, it's clear they are not. I mean, just to quickly clean up a few things. There is not, we did not agree to any jury instruction. We submitted competing jury instructions. The district court adopted no jury instructions. This was a bench trial. The jury instructions from the government don't have anything to do with anything. And moreover, for the very reasons you indicated, Judge Hardiman, this goes back to this idea of variance versus constructive amendment. You know, okay, let's shift gears for the moment and talk about police duties. Did he have a gun? Well, what we heard was, I'm not quite sure. I'm not really sure what the record was on that. I don't think so. Yes, maybe, no, who knows what. Was, you know, some other, was there uniforms? Were, you know, did they have arrest authority? That's something I brought up in the briefing, right? These are all great things to explore at a hypothetical trial that was never, on a charge that was never made, and that's the whole point. That's why it's a constructive amendment. It's not, we didn't know everything that was coming down the pike here. We knew that they were going to try to shoehorn assistant into officer. That's what we knew, because their trial brief said that. And that's what we were prepared for at trial. No, that's not true. We made that same legal argument that I made in the briefs, and that I think prevails. So we were ready for that. That's right. What we weren't ready for, first time I ever heard on appeal, that, oh, no, the people they were assisting were these unnamed supervisors at FPS. Never knew that at trial. That wasn't in their trial memorandum, because it's a new theory. You agree that these contractors were performing a federal function? So I can agree with that, and that goes to the Fiola point, because Fiola doesn't have anything. Fiola was a DEA agent, OK? And so the issue there was CNTR, as we've discussed previously. And in the course of that, one line, the Supreme Court said, well, if we impose the CNTR rule, that's going to sort of narrow the issue, and it's going to narrow the scope of the statute. And the Congress was really worried about protecting federal duties here. And so that might put too high of a burden on the prosecution to prove this crime. Nothing whatsoever to do with anybody who serves in the federal function is an officer. That's overriding the text of the statute. And I think, Your Honor, as a great hypothetical, if someone takes it upon themselves to help you in a mugging, by that logic, that person is serving a federal duty. The FPS officer wasn't around. It wasn't at the courthouse. It was two blocks away, or whatever. Fiola pose a problem for you, or no? No, not at all, not at all. We're not arguing CNTR. We accept that, absolutely. It only goes so far. And I think even Mr. Jane acknowledged that the case is just illustrative on some general point. No case has ever. And what the circuit cases have done with Fiola, which I actually disagree with, but I don't have to quibble with today, is they've said, OK, they've used that dictum in Fiola to say, it's good enough to help the Social Security Agency. You don't have to actually help a particular officer. That's the extension of Fiola that's happened in some circuit courts. I think that's wrong. Again, it doesn't matter here. No circuit court has ever said, OK, we're going to jump from that dictum to, OK, forget the statute. Forget officer, employee, assistant. We're going to say anybody who's serving a federal function. No court has done that. One last point, again, if I may, on constructive amendment and variance. I was going to ask you about that. Great. It's not, I shouldn't confess this after over a decade of service on this court, but it's not crystal clear to me where one ends and the other begins. What's your best definition of each, and how do you distinguish? This is a vexing issue, and I've thought a lot about it. So let me give you, I think I have a pretty good answer. But first, let's say what it's not. What I heard from Mr. Jean is different statutes, different burglary, robbery. Sure, those are constructive amendments. That's not the field, right? Sterone, the seminal constructive amendment case involved the very same statute. Was it sand or was it stone, right? And so that's not the test. The test isn't, oh, it's some different section of the US Code or something like that. Instead, and I would point the court to Hara. I think Hara is the most recent articulation of this. Stevenson from a number of years ago as well. And what those cases say is that the line is on essential element. How helpful is that? But here's what essential element means. Essential element of the offense is the stuff that's in the code. Here, officer of the United States, assault, and also plus the essential facts that are required to be in there so that the defendant knows how to prepare for trial and complete double jeopardy later. So those facts, it's sort of a group of facts. Those are essential elements. And if those change, then it's a constructive amendment. If there's some inessential element in the indictment that changes, turns out to be wrong, inessential fact, excuse me, in the indictment that turns out to be wrong, that's a variance. So let me illustrate it here in this case. If the indictment had charged an assistant, and their title is triple canopy guard or whatever, and it turns out their actual title was protective security officer, which is actually the title, we have no complaint, right? Because what was critical to put us on a trial footing was that the theory of guilt was assistant, and that it was these officers, or it was these individual victims. And they did that. They put their initials in the indictment. That's good for them. But just because they've done that, because it's not a general assault statute, doesn't mean that that's independently enough. So that's, sorry, my sort of long-winded answer to your question. No, that's helpful, but then I think the next question is, in this case, are they essential or not? Well, for all the reasons we discussed is how the trials would differ, they're absolutely essential. And I'll point, again, the court to the 922G analogy. We wouldn't even be thinking this. We wouldn't be thinking like, oh, well, not a felon, but we're a different felony, or whatever. It's the same thing. It's the status, that's what this whole case was about. This was not a who had it done it to them case. This was a, is this a federal crime case? There was an assault. These folks were assaulted. But the question, the critical. Are these people protected under federal law? Exactly. Are they the status? So that's why it changes. And if the answer is yes, which it seems to be yes, did they indict it and try it that way? That's correct. And my last, and the court has been so kind, I won't ask for more, but my last comment is that we have to remember, step back here for a second, under none of these theories do these convictions just get affirmed. So we're here arguing about status. A retrial would be required on a proper instruction, like if police duties were enough, for instance. The answer isn't affirm these convictions. The answer is you've got to send it back. That's McCormick. That's black letter Supreme Court law. The constructive amendment piece is similar. And on that, the issue is there's no point in sending it back. But it certainly cannot be affirmed on that alternative basis. Let me ask you one other question. Hopefully my colleagues will indulge me. Let's assume you're wrong on constructive amendment. Mr. Jane says, OK, maybe there's a variance, but no prejudice. You guys handed up a brief where you flagged the variance issue. And as I understood his argument, how could there be unfair surprise if you yourself, if you're off, if your predecessor in the district court briefed it? So what's your answer on his argument, no prejudice? Well, the answer is the arguments are different. I mean, the answer is I don't think they're making the officer equals everything argument anymore. I think what they're making is, OK, forget officer. Assistant, we're going with assistant. That's what it should have been from the beginning, right? But that's what they're making. That was never, we had never had notice of that. We had notice of the idea that they're going to try to. Well, at some point in the trial, I understood him to be arguing at some point in the trial you had notice of it because you briefed it. No, no, no. You said it was a variance. Is that what the trial brief said? We said it was a constructive amendment. And belt and suspenders, we said, are at least a prejudicial variance, like I did on appeal. But the point was, yes, we knew they were going to do the shoehorn maneuver. But that somehow, that doesn't equate to what they're trying to, that's not the same as what they're doing now, which is, OK, that's a little absurd, that argument. Or it doesn't, it's ataxial, let's put it that way. So we're just going to go with assistant. That was not the theory below. And the trials would have been different. So we did not submit a brief that said, we did not hand up. Your prejudice argument is, we try this case in a very different way. Because instead of making a technical legal argument, we are delving heavily into the true facts of the crime and trying to unpack what happened. Who's this, like this person, these unnamed officers, that comes up for the first time on appeal. That's not, there was no trial brief about some unnamed supervisor, FPS, who was being assisted by these folks. Clarence Thomas, the guy who transported him to lock up, that came out at the very end of trials, sort of like, hey, this is the completion of the story. This was not the focus of the trial. The focus would be totally different. And we'd need a definition of what assistant means. And that goes to the Fiola point, actually. Because as I said before, I would maintain as a legal matter, if it were relevant. Now it's not relevant. But if it were relevant, I would say, no. Assisting an agency is not sufficient. The text of the statute requires you to be assisting a blood and bones person, an officer of the United States. And again, that is another distinction with their theory below. Never below was it brief jury instructions, or brief handed up, or anything. Nowhere was there, you were assisting A, B, and C. The entire theory was, you were assisting the Social Security Administration. In fact, that was the direct examination of the victims here. You were assisting the Social Security Administration, weren't you? Yes, I was. That's the element. So totally different. Totally different trial. Thank you, Your Honors. All right, thank you, Mr. Schweitzer. Thank you, Mr. Jane. Case was very well argued. We appreciate both of your stamina. And we'll take the matter under advice.